**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
MONTGOMERY DIVISION**

| | |
|---|---|
| **ASSUREDPARTNERS OF ALABAMA, LLC** ) | |
| ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No.: 2:20-cv-00566-MHT-JTA** |
| ) | |
| **PALOMAR INSURANCE CORPORATION AND AUSTIN GOLSON,** ) | |
| ) | |
| ) | |
| ) | |
| **Defendants.** ) | |

## DEFENDANTS' ANSWER AND COUNTERCLAIM COMPLAINT

Defendants Palomar Insurance Corporation ("Palomar") and Austin Golson ("Golson") (collectively "Defendants") hereby answer the complaint in the above styled action filed by AssuredPartners Alabama, LLC ("Plaintiff" or "AssuredPartners") and assert the below counterclaim for a declaratory judgment.

## THE PARTIES, JURISDICTION, AND VENUE

### NATURE OF ACTION

Austin Golson stole AssuredPartners' trade secrets and confidential information. On July 24, 2020, Golson came to work with a special briefcase he did not normally carry and proceeded to pack that briefcase with all of his personal belongings from his AssuredPartners' office. After speaking with a fellow Producer, Golson left for a 10 a.m. meeting with his new employer, Palomar Insurance, and its counsel, Balch & Bingham. When he left for that meeting, Golson left his AssuredPartners-issued laptop behind. After that meeting, though, Golson returned to his office and took his laptop and then, with Palomar's knowledge, if not direction, had it duplicated, creating a mirror image of its contents, including extensive confidential information.

The following Monday, July 27, 2020, Golson sent AssuredPartners' agency president an email, advising that he was terminating his own employment with AssuredPartners and directing AssuredPartners to contact his attorney. Golson's intentional acts, with the direct assistance of Palomar, are both unlawful and a direct violation of his restrictive covenants agreement with AssuredPartners. Indeed, Palomar is no stranger to such improper behavior as it has specifically targeted AssuredPartners' employees and customers in the past, despite knowing that AssuredPartners requires its employees to sign and abide by restrictive covenant agreements.

Based on Palomar's most recent attempt to steal AssuredPartners' information, AssuredPartners now seeks relief against Golson and Palomar for the misappropriation, conversion, conspiracy and breach of contract claims described more fully below.

ANSWER: Defendants deny the above narrative "Nature of the Action."

## PARTIES, JURISDICTION AND VENUE

1.     AssuredPartners sells insurance for safety, risk mitigation, workers' compensation, employee benefits and related types of products throughout the United States.

ANSWER: Defendants admit that AssuredPartners is in the business of selling insurance. As to the remainder of this paragraph, Defendants have insufficient information to admit or deny.

2.     The only member of AssuredPartners of Alabama LLC is AssuredPartners Capital, Inc., which is organized and operating under the laws of Delaware, with its principal place of business in Lake Mary, Florida. AssuredPartners is therefore a citizen of Delaware and Florida.

ANSWER: Defendants have insufficient information to admit or deny this paragraph.

3.     Defendant, Palomar Insurance Corporation, is an Alabama corporation with its principal place of business in Montgomery, Alabama. Palomar is a citizen of Alabama. Palomar is an independent insurance company and sells commercial and personal-related types of insurance. Palomar          is          a          direct          competitor          of          AssuredPartners.

ANSWER: Admitted, except that Defendants have insufficient information to admit or deny that Palomar and AssuredPartners are competitors across all product lines or all parts of the United States.

4.     This Court has personal jurisdiction over Palomar because it conducts business within this District and because Palomar caused events to occur in this District out of which this Complaint arise.

ANSWER: Admitted, except to the extent that this paragraph suggests Defendants have engaged in wrongful conduct.

5.     Defendant Austin Golson is a former employee of AssuredPartners and is currently employed by Palomar in substantially the same capacity that Golson worked for AssuredPartners. Golson is a citizen of Alabama.

ANSWER: Admitted that Golson is a former employee of AssuredPartners and is currently

9378717.1

employed by Palomar. It is further admitted that Golson is an Alabama citizen and that he was a producer at AssuredPartners and is a producer at Palomar. Otherwise, this paragraph is denied.

6.    This Court has personal jurisdiction over Golson because Golson resides in this District, and because Golson caused events to occur in this District, out of which this Complaint arises.

ANSWER: Admitted.

7.    This Court has subject matter jurisdiction over AssuredPartners' claims pursuant to 28 U.S.C. §1332 because there is complete diversity of citizenship and because the amount in controversy, exclusive of interest and costs, while impossible to calculate with precision, exceeds $75,000.

ANSWER: Admitted

8.    This Court also has subject matter jurisdiction over the claims of AssuredPartners pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367 because the First Cause of Action alleges a claim for misappropriation of trade secrets under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1832 et seq., and AssuredPartners' other claims are so related to its federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

ANSWER: Admitted

9.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to AssuredPartners' claims occurred in this District.

ANSWER: Admitted

## Background

10.    AssuredPartners is a leading provider of insurance products and services to businesses located in Alabama and throughout the nation. AssuredPartners has an office in Troy and Montgomery, Alabama where Golson worked.

ANSWER: Admitted that AssuredPartners sells insurance; that it has offices in Alabama and that Golson worked for AssuredPartners. Otherwise denied.

11.    The business of AssuredPartners primarily focuses on employee benefits, property and casualty, and executive and personal insurance products and services.

ANSWER: Admitted that AssuredPartners sells insurance; otherwise, Defendants are without sufficient knowledge to admit or deny.

12.    AssuredPartners hires and trains salespersons, known as "Producers," to sell its insurance products and services to its clients. AssuredPartners rigorously screens and trains its Producers to ensure that the Producers are qualified to represent and sell its products, have the proper tools to

9378717.1

analyze and meet client needs, and can furnish AssuredPartners' clients with tailored insurance solutions and services that satisfy the clients' unique insurance needs.

ANSWER: Admitted that AssuredPartners has producer/salespersons. Otherwise, Defendants are without sufficient knowledge to admit or deny.

13.    AssuredPartners expends substantial resources advertising, marketing and promoting its insurance products and services. These expenditures include, among other things, marketing materials, marketing events, and on-and-off-site client events.

ANSWER: Admitted that AssuredPartners engages in marketing. Otherwise, Defendants are without sufficient knowledge to admit or deny.

14.    The training AssuredPartners provides, the Confidential Information belonging to AssuredPartners, and its substantial expenditures promoting its products and services enables Producers to develop and cultivate loyal client accounts and relationships on behalf of AssuredPartners. Producers solicit business for the Company, provide quotes and proposals to prospective clients, and, once policies are in place, provide day-to-day support as required by clients. In essence, Producers are the "face" of AssuredPartners to its current and future clients.

ANSWER: Admitted that AssuredPartners solicits business, provides sales quotes and to some extent serviced client needs. Otherwise, Defendants are without sufficient knowledge to admit or deny, or, alternatively is not a statement of "fact" to which the Defendants are obligated to respond.

15.    The loyalty AssuredPartners' Producers generate using AssuredPartners' resources and training procures repeat business, including policy renewals, which provide AssuredPartners with its competitive advantage in the highly competitive insurance industry.

ANSWER: Admitted that AssuredPartners to some extent seeks repeat business. Otherwise, this is not a statement of "fact" to which the Defendants are obligated to respond.

Protection of AssuredPartners' Confidential Information

16.    The business of AssuredPartners involves the collection, generation, use, and protection of confidential information, including, but not limited to, the identity of clients and prospective clients, including the contact information for key decisionmakers; client insurance needs; vendors; insurance carriers; policy terms of existing clients; expiration/renewal dates; AssuredPartners' financial condition including its marketing plans, pricing and business strategies and methods; and the services and products AssuredPartners offers, including insurance rating information; and pricing information for AssuredPartners' insurance offerings and other products. All of this information is compiled and kept on AssuredPartners' servers and accessible by employee laptops.

ANSWER: Admitted that AssuredPartners has information that it characterizes as "confidential." Otherwise, the above averment is too generalized for the Defendants to admit or deny.

9378717.1

17.    AssuredPartners' Confidential Information is the product of years of accumulation and distillation of proprietary information. AssuredPartners has made a considerable investment in terms of hours and expense to accumulate, compile and maintain this confidential information.

ANSWER: Admitted that AssuredPartners has information that it characterizes as "confidential." Otherwise, the above averment is too generalized for the Defendants to admit or deny.

18.    AssuredPartners goes to great efforts to maintain the secrecy of its Confidential Information, including, but not limited to: limiting the disclosure and use of this information to those who have specific specialties and experience; educating Producers about the requirements and necessity of keeping this information confidential; restricting access to this information by limiting access to computer networks containing this information to those employees with specific specialties and experience; requiring the use of passwords to access the information; requiring Producers to execute written agreements that protect against the misuse and improper disclosure and post-employment retention of the Confidential Information, and engaging in post-employment efforts to ensure its Confidential Information is maintained by departing employees in confidence and not shared with competitors. This Confidential Information is not available to the public, is not shared with the public, and is competitively valuable to competitors of AssuredPartners.

ANSWER: On information and belief, admitted that AssuredPartners takes steps to protect information that it characterizes as "confidential." Otherwise, the above averment is too generalized for the Defendants to admit or deny.

19.    As a condition of employment, AssuredPartners' Producers execute a Restrictive Covenants Agreement ("Agreement") under which the employee agrees that he or she "shall not use, or disclose to any third party, any Confidential Information for any reason other than as intended within the scope of Employee's employment or as approved by an executive officer of the Company in writing. Upon separation of employment for any reason, or at any other time upon the request of the Company, Employee shall immediately deliver to the Company all documents, materials, and data (and copies thereof), in tangible, electronic, or intangible form, relating to the business of the Company."

ANSWER: Admitted that AssuredPartners has a document entitled Restrictive Covenants Agreement ("Agreement") and that part of that agreement is quoted above. . Otherwise, Defendants are without sufficient knowledge to admit or deny, or, alternatively is not a statement of "fact" to which the Defendants are obligated to respond.

Austin Golson Enters Into an Agreement With AssuredPartners

20.    Austin Golson began employment with AssuredPartners on or about January 14, 2019, as a Producer for AssuredPartners.

ANSWER: Admitted that at some point, Golson became an employee of AssuredPartners. Otherwise, Defendants are without sufficient knowledge to admit or deny.

9378717.1

21.    On or about January 14, 2019, Golson executed the Restrictive Covenants Agreement ("Agreement") with AssuredPartners. Attached as Exhibit A to the Complaint is a true and correct copy of the Agreement.

ANSWER: Admitted that at some point, Golson's electronic signature was affixed to the Agreement. Otherwise, Defendants are without sufficient knowledge to admit or deny this paragraph

22.    Golson's Agreement includes provisions relating to non-disclosure of confidential information, restrictions on solicitation of business on behalf of other insurance companies during the term of the Agreement, and restrictions on solicitation of or conducting of business with AssuredPartners' clients for a period of two (2) years following the termination of the Agreement.

ANSWER: Admitted that the Agreement purports to contain, among other things, restrictions against certain post-employment activities.

23.    With regard to non-disclosure of AssuredPartners' Confidential Information, the Agreement states in relevant part:

2.    Confidential Information.

(a)    For purposes of this Agreement, the term "Confidential Information" means all confidential, proprietary and/or non-public information, whether or not in written or recorded form, concerning the business or affairs of the Company and/or its affiliates, subsidiaries, and parent companies and each of their respective successors and assigns (collectively, the "Employer Group"), including but not limited to, information concerning:

(i)    the Employer Group's clients, prospective clients, acquisition targets, vendors, insurance brokers, vendors, insurance carriers, policy fauns and information, policy types, rating information, premium amounts, expiration dates, information on risk characteristics, information concerning insurance markets for large or unusual risks and/or contracts or arrangements (including special terms and deals);

(ii)    the Employer Group's financial condition, results of operations, marketing plans, business plans, operations, pricing, promotions, and business strategies and methods; and

(iii)    the services and products offered by the Company to its clients or prospective clients, including, but not limited to, policy forms, rating information, expiration dates, information on risk characteristics, and information concerning insurance markets for large or unusual risks.

(b)    Employee acknowledges and agrees that all Confidential Information is the sole and exclusive property of the Employer Group. Accordingly, both during and

after employment with the Company (whether such separation from employment is voluntary or involuntary, or with or without cause), Employee shall not use, or disclose to any third party, any Confidential Information for any reason other than as intended within the scope of Employee's employment or as approved by an executive officer of the Company in writing. Upon separation of employment for any reason, or at any other time upon request of the Company, Employee shall immediately deliver to the Company all documents, materials and data (and copies thereof), in tangible, electronic, or intangible form, relating to the business of the Company.  (See Exhibit A ¶ 2.)

ANSWER: Admitted that the Agreement has certain terms that purport to relate to "confidential information." Otherwise, this does not appear to be an averment to which a response is required.

24.    With regard to the restrictive covenants relating to AssuredPartners' clients, the Agreement states in relevant part as follows:

3.    Non-Solicitation & Non-Interference.

(a)    During Employee's employment with the Company, Employee shall not induce or attempt to induce, or refer to a third party the purpose of such third party inducing or attempting to induce, any person or entity to purchase an Insurance Product (as defined below) from any entity other than a member of the Employer Group. Furthermore, during the twenty-four (24) month period immediately following the date upon which Employee's employment ends with the Company (whether voluntary or involuntary or with or without cause) (the "Restricted Period"), Employee shall not directly or indirectly through another person or entity (each, a "Restricted Activity"):

offer, sell, solicit, quote, place, provide, renew or service any insurance product or service to, for, or on behalf of, any Restricted Client;

(i)    take any action intended, or reasonably likely, to cause any Restricted Client, or any vendor, insurance carrier, wholesale broker, other client of the Employer Group, or any other third party that, in each case, Employee knows or has reason to know has a material business relationship with the Employer Group, to diminish its business with, or cease or refrain from doing business with, the Employer Group; or

(iii)    solicit for employment, hire, engage to perform services, or induce to terminate employment with the Employer Group, any of the Employer Group's current employees, or solicit for employment, hire, or engage to perform services, any person that was employed by the Employer Group within the six (6) months prior to the cessation of such person's employment with the Company for any reason.

(b)    Restricted Clients. For purposes of this Agreement, "Restricted Client" means the following:

9378717.1

(i) any client of the Employer Group during the two (2) years immediately preceding the date upon which Employee's employment with the Company ends for any reason: (A) as to which Employee received commission compensation and/or fees; (B) for which Employee had material involvement in proposing, selling, quoting, placing, providing, servicing, or renewing any insurance product or service offered by any person or entity within the Employer Group (each, an "Insurance Product"); or (C) about whom Employee received Confidential Information; or

(ii) any prospective client of the Employer Group during the two (2) years immediately preceding the date upon which Employee's employment with the Company ends for any reason: (A) for which Employee had material involvement in proposing, selling, quoting, placing, providing, servicing or renewing any Insurance Product, or (B) about whom the Employee received Confidential Information.

(c) Employee acknowledges and agrees that the definition of Restricted Clients is reasonable in scope and degree, is not overly broad, and, upon any enforcement of the Restricted Covenants, will not preclude or prevent Employee from earning a living after the termination of Employee's employment with the Company.

(See Exhibit A ¶ 3.)

ANSWER: Admitted that the Agreement has certain terms that purport to relate to post-employment activities. Otherwise, this does not appear to be an averment to which a response is required.

26.    With regard to remedies available to AssuredPartners for any breach of the above-referenced covenants, the Agreement states in relevant part as follows:

4.    Remedies. In the event of the breach or a threatened breach by Employee of any of the obligations of Sections 2 or 3, (the "Restrictive Covenants"), the Company, in addition to other rights and remedies available to it, shall be entitled to injunctive relief and may apply to any court for specific performance, temporary, preliminary, and/or permanent injunctive relief, or other relief in order to enforce the obligations or prevent any breach of such obligations. In addition, in the event of a breach by Employee of any of the Restrictive Covenants, the Restricted Period shall be tolled until such breach has been cured. Employee further acknowledges and agrees that each member of the Employer Group is an intended third-party beneficiary of this Agreement.

(See Exhibit A ¶ 4)

8

ANSWER: Admitted that the Agreement has a term that purports to relate to "Remedies." Otherwise, this does not appear to be an averment to which a response is required.

27.     The Agreement also states:

> 13.     Modification; Severability. Should any provision of this Agreement be held by a court of competent jurisdiction to be enforceable only if modified, or if any portion of this Agreement shall be held as unenforceable and thus stricken, such holding shall not affect the validity of the remainder of this Agreement, the balance of which shall continue to be binding upon the Company and Employee with any such modification to become a part hereof and treated as though originally set forth in this Agreement. The Company and Employee thither agree that any such court is expressly authorized to modify any such unenforceable provision of this Agreement in lieu of severing such unenforceable provision from this Agreement in its entirety, whether by rewriting the offending provision, deleting any or all of the offending provision, adding additional language to this Agreement or by making such other modifications as it deems warranted to carry out the intent and agreement of the Company and Employee as embodied herein to the maximum extent permitted by law. The Company and Employee expressly agree that this Agreement as so modified by the court shall be binding upon and enforceable against each of them. In any event, should one or more of the provisions of this Agreement be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provisions hereof, and if such provision or provisions are not modified as provided above, this Agreement shall be construed as if such invalid, illegal or unenforceable provisions had not been set forth herein.

(Exhibit A ¶ 13.)


ANSWER: Admitted that the Agreement has a term that purports to relate to "Modification/Severability." Otherwise, this does not appear to be an averment to which a response is required.

28.     The Agreement further provides that, "If either the Company or Employee engages one or more attorneys to enforce any of the terms of this Agreement or otherwise protect it against any breach or threatened breach of this Agreement, whether or not a lawsuit or claim is actually filed, the non-prevailing party shall be responsible for and shall promptly pay all of the prevailing party's reasonable attorneys' fees, costs and expenses, and all other reasonable costs and expenses, in addition to any other legal or equitable relief to which the prevailing party may be entitled." (See Exhibit A ¶ 18.).)

ANSWER: Admitted that the Agreement has a term that purports to relate to partial fee-shifting. Otherwise, this does not appear to be an averment to which a response is required. Golson's Employment and Separation

9378717.1

29.    During his employment with AssuredPartners, Golson solicited and sold insurance products on behalf of AssuredPartners.

Answer: Admitted that while employed by AssuredPartners, Golson sold insurance products.

30.    Golson resigned suspiciously and without notice or warning.

Answer: Admitted that Golson resigned from AssuredPartners; otherwise, denied.

31.    At 6:58 a.m. on Monday, July 27, 2020, using his personal email account, while at his home, Golson resigned "effective immediately" to Bill Hamrick, his supervisor.

Answer: Admitted that Golson resigned in writing from AssuredPartners on Monday, July 27, 2020.

32.    He stated in his resignation, "Please direct any questions about this to Will Hill Tankersley, a lawyer with Balch & Bingham in Montgomery. .. ."

Answer: Admitted.

33.    After his resignation, AssuredPartners learned that Golson had packed up his personal belongings from his AssuredPartners office a few days earlier, on July 24, 2020. When he was done, he told a fellow AssuredPartners Producer that he was going to meet with Palomar and its counsel.

Answer: Admitted that Golson collected some personal belongings from his AssuredPartners office in advance of resigning from AssuredPartners.

34.    Prior to resigning he made a special but unauthorized trip to the offices of AssuredPartners to expressly steal his AssuredPartners' computer and all information on it, including the compilations of client data.

Answer: Denied.

35.    On information and belief, Palomar had knowledge of and/or directed Golson to retrieve his laptop.

Answer: Denied.

36.    The purpose of this theft was to copy the hard drive of the laptop and all compilations of data on the computer.

Answer: Denied.

37.    Within hours of the discovery, AssuredPartners demanded the return of the laptop and forensic image.

Answer: Admitted that on July 27, 2020, after seeking transmittal instructions, Defendants voluntarily transmitted the Assured/Partners laptop and agreed to transmit Defendants forensic image of the laptop to AssuredPartners.

38.    Golson, Palomar and counsel had the laptop in their unauthorized possession more than three (3) days which provided ample opportunity to take photos or notes regarding the compilations of customer data or outright upload it onto their systems.

Answer: Denied.

Golson Begins to Work for AssuredPartners' Competitor and
Violates the Agreement and the Law

39.    Golson began employment with Palomar immediately on July 27, 2020. Golson is employed in substantially the same capacity as the position held with AssuredPartners.

Answer: Denied that Golson was employed by Palomar on July 27, 2020. Admitted that Golson is employed by Palomar as a producer.  Otherwise, this paragraph is too generalized for an additional response.

40.    Palomar is a direct competitor of AssuredPartners. Like AssuredPartners, Palomar also provides insurance and brokerage services and sells the same types of insurance products to the same types of clients as AssuredPartners.

Answer: Admitted that Palomar sells insurance products. Otherwise, this paragraph is too generalized for an additional response.

41.    Palomar has recently hired at least two (2) other AssuredPartners Producers and Palomar, through other producers, have called upon AssuredPartners' customers in direct violation of AssuredPartners' restrictive covenants agreements.

Answer: Admitted that Palomar has hired other AssuredPartners producers. Otherwise, denied.

42.    Golson intends to use AssuredPartners' Confidential Information — including confidential client contact information — to directly or indirectly solicit AssuredPartners' clients — there was no other reason for the theft.

Answer: Denied.

43.    Palomar is aware that Golson had an Agreement with AssuredPartners that prohibits Golson from possessing or using AssuredPartners' Confidential Information after Golson's employment ended, and that prohibits solicitation of AssuredPartners' clients for a reasonable time

9378717.1

after Golson's employment ended because Palomar has hired other AssuredPartners' producers, with similar agreements.

Answer: Admitted that Palomar is aware that Golson has an agreement that purports to limit certain post-employment activity. Otherwise, this paragraph contains an averment embodying a legal argument to which a response is not required.

44.    Palomar will either encourage and/or instruct Golson to disregard the duties and obligations Golson owes to AssuredPartners pursuant to the Agreement and applicable law or use the information to supply other Palomar producers to do indirectly what Golson cannot do himself.

Answer: Denied.

Irreparable Harm to AssuredPartners

45.    AssuredPartners' competitive advantage and success is based in large part upon the goodwill and the strength of its Producers' relationships with its clients, which Producers develop, foster and maintain using the training and Confidential Information that AssuredPartners provides to its Producers.

Answer: This paragraph contains an averment embodying a legal argument to which a response is not required.

46.    Golson converted AssuredPartners' laptop for Golson's own gain, and for the gain of Palomar.

Answer: Denied

47.    Golson's actions have irreparably harmed and continue to harm AssuredPartners' legitimate business interests, its goodwill with its clients, and jeopardize its client relationships.

Answer: Denied

48.    Palomar's copying of AssuredPartners' laptop and Confidential Information enables it to unfairly compete with AssuredPartners. Palomar may use the Confidential Information to contact AssuredPartners' clients and offer competing products and services based upon terms and conditions provided by AssuredPartners' products and services.

Answer: Denied

9378717.1

49.     Accordingly, AssuredPartners is suffering irreparable harm and immediate injunctive relief is necessary and appropriate to prevent further damage to AssuredPartners. Injury to AssuredPartners is probable and imminent because Golson has already demonstrated an intent to, and is likely to continue to, use AssuredPartners' Confidential Information in violation of the law and the Agreement.

Answer: Denied

FIRST CAUSE OF ACTION
Violation of the Defend Trade Secrets Act 18 U.S.C. § 1832 et seq.

50.     AssuredPartners re-alleges and incorporates paragraphs 1 through 49 by reference as if fully set forth herein.

Answer: Defendants readopt and re-allege the responses above.

51.     AssuredPartners' Confidential Information and expressly its compilations of information regarding the identity of clients and prospective clients, including the contact information for key decisionmakers; client insurance needs, vendors, insurance carriers, policy terms of existing clients, expiration/renewal dates, AssuredPartners' financial condition including its marketing plans, pricing and business strategies and methods; and the services and products AssuredPartners offers, including insurance rating information, and pricing information for AssuredPartners' insurance offerings and other products, constitute trade secrets as defined by the Defend Trade Secrets Act, 18 U.S.C. § 1832 et seq. ("DTSA"). This information has independent economic value because it is not generally known to and not readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use.

Answer: This paragraph contains an averment embodying a legal argument to which a response is not required.

52.     The value of AssuredPartners' trade secrets is demonstrated, in part, by Golson's conversion of the laptop and the information on it.

Answer: This paragraph contains an averment embodying a legal argument to which a response is not required.

53.     AssuredPartners' Confidential Information is not generally available to its competitors. It derives independent economic value from not being generally known to other persons who could otherwise obtain economic value from its disclosure or use, and it is the subject of efforts that are reasonable under the circumstances to maintain its confidentiality.

Answer: This paragraph contains an averment embodying a legal argument to which a response is not required.

54.     AssuredPartners' Confidential Information provides critical commercial and competitive advantages to AssuredPartners.

Answer: Denied.

9378717.1

55.    AssuredPartners has taken reasonable and adequate precautions to protect its Confidential information, including, but not limited to, limiting access to the information to a select group of individuals on a need-to-know basis in order to perform their employment and Producer duties, and requiring certain individuals to sign confidentiality agreements as a condition of employment.

Answer: This paragraph contains an averment embodying a legal argument to which a response is not required.

56.    AssuredPartners' trade secrets are related to its products and services used in, or intended to be used in, interstate or foreign commerce.

Answer: This paragraph contains an averment embodying a legal argument to which a response is not required.

57.    Golson and Palomar are aware of the confidential and proprietary nature of AssuredPartners' Confidential Information, and of their duty not to use such information for their own benefit, or for the benefit of any person or entity other than AssuredPartners.

Answer: This paragraph contains an averment embodying a legal argument to which a response is not required.

58.    Golson and Palomar have willfully, wrongfully, and maliciously misappropriated AssuredPartners' Confidential Information by copying it and viewing it.

Answer: Denied.

59.    Golson and Palomar have engaged in actual and threatened misappropriation of AssuredPartners' trade secrets.

Answer: Denied.

60.    AssuredPartners has suffered and will continue to suffer irreparable harm, including, but not limited to, a loss of its competitive advantage, loss of business, loss of goodwill, and other damage unless Golson and Palomar, are enjoined from continuing to benefit from any unlawful misappropriation of AssuredPartners' trade secrets and confidential information.

Answer: Denied.

61.    The conduct of Golson and Palomar was willful, malicious, and done in conscious disregard of AssuredPartners' rights, entitling AssuredPartners to exemplary damages and attorney's fees and costs in an amount to be proven at trial.

Answer: Denied.

62.    Pursuant to the Act, AssuredPartners is entitled to preliminary and permanent injunctive relief, enjoining and restraining Golson and Palomar, from all acts of actual and threatened misappropriation of the trade secrets of AssuredPartners; and an award of compensatory damages for actual losses caused by Defendants' misappropriation of trade secrets, attorneys' fees, an award

of damages for unjust enrichment caused by Defendants' misappropriation of trade secrets, and an award of exemplary damages under 18 U.S.C. § 1836(b)(3).

Answer: Denied.

## SECOND CAUSE OF ACTION
### Violation of the Alabama Uniform Trade Secrets Act

63.     AssuredPartners re-alleges and incorporates paragraphs 1 through 62 of this Complaint by reference as if fully set forth herein.

Answer:     Defendants     readopt     and     re-allege     the     responses     above.

64.     AssuredPartners is the rightful owner of its Confidential Information, including, but not limited to the multiple compilations of information collecting the identity of clients and prospective clients, the contact information of key decisionmakers, client insurance needs; vendors; insurance carriers, policy terms of existing clients, expiration/renewal dates, AssuredPartners' financial condition including its marketing plans, pricing and business strategies and methods, and the services and products AssuredPartners offers, including insurance rating information; and pricing information for AssuredPartners' insurance offerings and other products.

Answer: This paragraph contains an averment embodying a legal argument to which a response is not required.

65.     Golson and Palomar had access to AssuredPartners' Confidential Information and laptop and for three days had time to copy the information and make notes that he and/or Palomar can use later.

Answer: Denied.

66.     AssuredPartners' Confidential Information is not generally available to AssuredPartners' competitors. It derives independent economic value from not being generally known to other persons who could otherwise obtain economic value from its disclosure or use, and it is the subject of efforts that are reasonable under the circumstances to maintain its confidentiality.

Answer: This paragraph contains an averment embodying a legal argument to which a response is not required.

67.     AssuredPartners' Confidential Information provides critical commercial and competitive advantages to AssuredPartners.

Answer: Denied.

9378717.1

68. AssuredPartners has taken reasonable and adequate precautions to protect its Confidential Information, including, but not limited to, limiting access to the information to a select group of individuals on a need-to-know basis in order to perform their employment and agent duties, and requiring certain individuals, including Golson to sign confidentiality agreements as a condition of employment.

Answer: This paragraph contains an averment embodying a legal argument to which a response is not required.

69. Golson and Palomar are prohibited from misappropriating AssuredPartners' Confidential Information, which is a trade secret pursuant to Alabama Uniform Trade Secret Act.

Answer: This paragraph contains an averment embodying a legal argument to which a response is not required.

70. Golson and Palomar are aware of the confidential and proprietary nature of AssuredPartners' trade secrets, and of Golson's duty not to use such information for Golson's own benefit, or for the benefit of any person or entity other than AssuredPartners.

Answer: Admitted that Palomar directed Golson not to make any use of AssuredPartners information; otherwise, denied.

71. Golson and Palomar willfully, wrongfully, and maliciously misappropriated AssuredPartners' trade secrets by using Golson's knowledge of AssuredPartners' trade secrets relating to its clients to AssuredPartners' detriment.

Answer: Denied.

72. Golson and Palomar have engaged in actual and threatened misappropriation of AssuredPartners' trade secrets.

Answer: Denied.

73. AssuredPartners has suffered and will continue to suffer irreparable harm, including, but not limited to, a loss of its competitive advantage, loss of business, loss of goodwill, and other damage unless Golson is enjoined from continuing to benefit from any unlawful misappropriation of AssuredPartners' trade secrets.

Answer: Denied.

74. Unless restrained, Golson and Palomar will continue to misappropriate AssuredPartners' trade secrets in violation of the Act.

Answer: Denied.

75. As a direct and proximate consequence of the conduct of Golson and Palomar, AssuredPartners has been damaged in an amount to be proven at trial.

16

Answer: Denied.

76.    The conduct of Golson and Palomar was willful, malicious, and done in conscious disregard of AssuredPartners' rights, entitling AssuredPartners to exemplary damages and attorney's fees and costs in an amount to be proven at trial.

Answer: Denied.

77.    Pursuant to the Act, AssuredPartners is entitled to preliminary and permanent injunctive relief, enjoining and restraining Golson and Palomar from all acts of actual and threatened misappropriation of the trade secrets of AssuredPartners; and an award of damages against Golson to compensate AssuredPartners for all losses proximately caused by such acts of actual and threatened misappropriation.

Answer: Denied.


THIRD CAUSE OF ACTION
Breach of Contract

78.    AssuredPartners re-alleges and incorporates paragraphs 1 through 77 by reference as if fully set forth herein.

Answer: Defendants readopt and re-allege the responses above.

79.    On January 14, 2019, as a condition of employment with AssuredPartners, Golson entered into an Agreement with AssuredPartners which required ongoing mutual duties of the parties.


Answer: This paragraph contains an averment embodying a legal argument to which a response is not required.

80.    The Agreement with Golson is valid and enforceable.

Answer: Denied.

81.    AssuredPartners performed all of its obligations under its agreement with Golson.

Answer: Defendants at this time are unable to admit or deny this averment.

82.    Under the Agreement, Golson promised that he would not solicit, quote, place, provide, renew or service AssuredPartners' clients for two years after employment ended.

Answer: This paragraph contains an averment embodying a legal argument to which a response is not required.

83.    Under the Agreement, Golson promised not to take any action that would cause a client of AssuredPartners to cease or refrain from doing business with AssuredPartners.

9378717.1

Answer: This paragraph contains an averment embodying a legal argument to which a response is not required.

84.    Under the Agreement, Golson agreed not to disclose AssuredPartners' Confidential Information to anyone not authorized to receive or use the information, and not to retain any such information after employment ended.

Answer: This paragraph contains an averment embodying a legal argument to which a response is not required.

85.    The post-termination covenants in the Agreement are reasonable in scope and duration given the renewal cycle in the industry, and are necessary to protect AssuredPartners' legitimate business interests in its Confidential Information, goodwill, and longstanding client relationships.

Answer: This paragraph contains an averment embodying a legal argument to which a response is not required.

86.    Golson breached the Agreement and continues to breach the Agreement by:

     a.    retaining and using AssuredPartners' Confidential Information;

     b.    copying and viewing AssuredPartners' Confidential Information and sharing it with others;

     c.    taking actions that would enable others at Palomar to solicit clients to cease or refrain from doing business with AssuredPartners.

Answer: Denied

87.    As a direct and proximate consequence of Golson's conduct, AssuredPartners has incurred, and will continue to incur, significant damage. Specifically, AssuredPartners suffered damage to its goodwill, reputation, and legitimate business interests in excess of $75,000.

Answer: Denied

88.    As described above, Golson has breached, and will continue to breach, contractual and legal obligations to AssuredPartners, and AssuredPartners has suffered, and will continue to suffer, irreparable harm and other damage as a result of Golson's actions in the absence of injunctive relief.

Answer: Denied

9378717.1

## FOURTH CAUSE OF ACTION
Tortious Interference with Contract (against Golson and Palomar)

89.    AssuredPartners re-alleges and incorporates paragraphs 1 through 88 by reference as if fully set forth herein.

Answer: Defendants readopt and re-allege the responses above.

90.    AssuredPartners possesses valid and enforceable contractual relationships with its clients.

Answer: This paragraph contains an averment embodying a legal argument to which a response is not required.

91.    Golson and Palomar had knowledge of AssuredPartners' contracts with its clients and of AssuredPartners' expectancy that these clients would continue to utilize its products and services, including purchasing future insurance policies.

Answer: This paragraph contains an averment embodying a legal argument to which a response is not required.

92.    By the acts described above, Golson and Palomar have intentionally interfered with AssuredPartners' contractual relationships with its clients. Palomar has specifically interfered with Golson's contract with AssuredPartners.

Answer: Denied

93.    Golson and Palomar have had an improper motive and improper means to interfere with AssuredPartners' contractual relations without lawful justification.

Answer: Denied

94.    As a direct and proximate consequence of the tortious interference of Golson and Palomar with AssuredPartners' contracts and business relations, AssuredPartners has been and will continue to be irreparably damaged through the immeasurable loss of business, client relations, profits and goodwill for which there is no adequate remedy at law.

Answer: Denied

95.    AssuredPartners is entitled to preliminary and permanent injunctive relief against Golson and Palomar enjoining and restraining them from further interfering with AssuredPartners' contractual and business relations.

Answer: Denied

96.    As a direct and proximate consequence of Golson's and Palomar's intentional and tortious conduct, AssuredPartners has been damaged in an amount to be proven at trial.

9378717.1

Answer: Denied

97.     Golson's and Palomar's tortious conduct was willful, malicious, and done in conscious disregard of AssuredPartners' rights, entitling AssuredPartners to punitive damages and attorney's fees and costs in an amount to be proven at trial.

Answer: Denied

## FIFTH CAUSE OF ACTION
### Conversion
### (Against all Defendants)

98.     The allegations of Paragraphs 1 through 97 are incorporated herein by reference with the same force and effect as if set forth in full below.

Answer:     Defendants     readopt     and     re-allege     the     responses     above.

99.     Through the actions alleged herein, the Defendants have converted the laptop computer and information on it, requiring AssuredPartners to expend time and resources to insist upon the return of its property.

Answer: Denied.

100.    Defendants were not authorized to receive or copy the laptop and information. A surrender of the property more than three (3) days later after having copied the information on the laptop is conversion.

Answer: Denied.

101.    Defendants should be required to reimburse AssuredPartners for its damages and expenses in an amount to be determined at trial.

Answer: Denied.

## PRAYER FOR RELIEF

WHEREFORE, AssuredPartners respectfully requests that this Court:

A.     Enter an injunction enjoining and restraining Golson and Palomar, and all those acting in concert or participation with them, from using, possessing, disclosing or having access to any AssuredPartners' Confidential Information;

9378717.1

B.      Enter an order requiring Golson and Palomar to return all AssuredPartners' Confidential Information to AssuredPartners;

C.      Enter an injunction enjoining and restraining Golson from offering, selling, soliciting, quoting, placing, providing, renewing or servicing any insurance product or service to, or on behalf of, any persons or entities, for the 24-month period immediately preceding the end of Golson's employment (a) who were clients or prospective clients of AssuredPartners with whom Golson had involvement in proposing, selling, quoting, placing, providing, servicing, or renewing any insurance product or service; and/or (b) about whom Golson received confidential, proprietary, and/or non-public information; and/or (c) were clients of the offices where Golson was employed (collectively, "Restricted Clients");

D.      Enter an injunction enjoining and restraining Golson from taking any action intended, or reasonably likely, to cause any client with a material business relationship with AssuredPartners to cease or refrain from doing business with AssuredPartners for twenty-four (24) months;

E.      Enter judgment against Golson and Palomar for compensatory damages in an amount to be determined at trial;

F.      Enter judgment against Golson and Palomar for exemplary damages in an amount to be determined at trial;

G.       Award AssuredPartners the costs and expenses, including the reasonable attorneys' fees and costs, AssuredPartners incurs as a result of Golson's breach of the Agreement, misappropriation of trade secrets, and tortious interference with AssuredPartners' contractual relations; and

H.      Award AssuredPartners any such other relief as the Court may deem just and proper.

Answer: To the extent an answer is required, Defendants deny that Plaintiff is entitled to any relief.


### AFFIRMATIVE DEFENSES

1.)    Plaintiff has failed to specify exactly what "trade secrets" were taken and used by the defendants.

2.)    Plaintiff has failed to identify the degree to which each and every trade secret claimed to have been misappropriated and used by the defendants satisfies each of the elements of the federal and state trade secrets acts.

3.)    Plaintiff has waived any claim based on the return of the Golson laptop and other information by having an information return protocol  in the Agreement with which Golson has complied.

4.)     Plaintiff is estopped from making any claim based on the return of the Golson laptop and other information by having an information return protocol  in the Agreement with which Golson has complied.

22

5.)    Plaintiff's claim for converting or misappropriating trade secrets or AssuredPartners property has been full satisfied based on the return of the Golson laptop and other information by having an information return protocol  in the Agreement with which Golson has complied.

6.)    Plaintiff is seeking to enforce unenforceable portions of the Agreement by advancing a scope of enforcement that exceed the permissible limits in Ala Code 8-1-190 *et seq.* Specifically, "prospects" are not a permitted restriction in a non-solicitation agreement, neither are generalized "prospects" protectable interest, AssuredPartners seeks to establish a "protectable interest" based in some instances  solely on commission assignments and not on actual relationships, AssuredPartners seeks to advance a protectable interest in former clients. The U.S. District Court for the Middle District of Alabama ("District") has personal jurisdiction because Golson is a resident of the District, Palomar has offices in the District and AssuredPartners has an office in the District.

7.)    Plaintiff is advancing an Agreement fatally lacking in mutuality because of the *de facto* one-way fee shifter in the Agreement.

8.)    Plaintiff is not entitled to recover exemplary damages or attorney fees under the Federal Defend Trade Secrets Act claim (First Cause of Action) ) for failure to include the required "whistleblower" language in 18 U.S.C. Sec. 1833 (b)

## JURY DEMAND

DEFENDANTS DEMAND A TRIAL BY JURY.

## COUNTERCLAIM FOR DECLARATORY JUDGMENT

### NATURE OF THE CASE

1.)    This is a counterclaim  for declaratory judgment pursuant to the Federal Declaratory Judgments Act, 28 U.S.C. §§ 2201–2202, and Rule 57 of the Federal Rules of Civil Procedure.

2.)     Plaintiff, AssuredPartners of Alabama, LLC ("AssuredPartners") ("AssuredPartners," "Counterclaim Defendant" or the "Plaintiff") is a former employer of defendant Austin T. Golson.

3.)    Plaintiff maintains that Golson violated a Restrictive Covenants Agreement" ("Agreement") and that Palomar Insurance Corporation ("Palomar") tortiously interfered with the Agreement.

4.)    Plaintiff has sued Golson and Palomar ("Palomar/Golson," Counterclaim Plaintiffs and Defendants") in the above-styled action seeking damages and equitable relief on a variety of legal theories.

5.)    Plaintiff and Defendants (collectively, the "Parties") have an active dispute represented by the above-styled action.

9378717.1

6.)     Palomar/Golson now seek a declaratory judgment that the Agreement is unenforceable as written, or, in the alternative is void for a lack of mutuality.

## DECLARATORY JUDGMENT COMPLAINT

### THE PARTIES

7.)     Golson is a former insurance producer/salesman/adviser ("Producer") living in Autauga County Alabama, with his office being in Montgomery, Alabama.

8.)     Palomar is, as of July 28, 2020, Golson's employer. Palomar is an Alabama corporation with its headquarters being in Montgomery, Alabama.

9.)     AssuredPartners was Golson's employer from approximately January 2019 to July 27, 2020.  On information and belief, AssuredPartners is an Alabama business entity with an office in Montgomery, Alabama.

### JURISDICTION AND VENUE

10.)     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 and 28 U.S.C. § 1332.

11.)    An actual controversy exists between the Parties within the meaning of 28 U.S.C. § 2202, which is of sufficient immediacy and reality to warrant declaratory relief.

12.)    This action concerns the issues of whether AssuredPartners has an Agreement with Golson that is enforceable to the degree being advanced by AssuredPartners. Likewise, this counterclaim involves the degree to which there is an enforceable agreement at all based on the lack of mutuality. Also, this counterclaim involves the degree to which Palomar is only "tortiously interfering" with unenforceable parts of the Agreement (i.e. not tortuously interfering at all).

13.)    Jurisdiction is therefore proper under 28 U.S.C. § 1331.

14.)    According to AssuredPartners complaint (that it is estopped to deny) this Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) because it is a dispute between citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.  Additionally, this Court has jurisdiction under the Federal Defend Trade Secrets Act 18 USC Sec. 1832 et seq.

15.)    The U.S. District Court for the Middle District of Alabama ("District") has personal jurisdiction because Golson is a resident of the District, Palomar has offices in the District and AssuredPartners has an office in the District.

16.)     All the parties do business in the District and many of the acts complained of and giving rise to the claims alleged herein occurred in the District.

17.)    Venue is proper pursuant to 28 U.S.C. § 1391(b) because the all the parties conduct business in the District and a substantial part of the events in the underlying complaint occurred in and around Montgomery, Alabama.

9378717.1

## STATEMENT OF FACTS

18.)    The AssuredPartners Restrictive Covenant Agreement dated January 14, 2019, ("Agreement") purportedly with Austin T. Golson ("Golson") contains provisions intended to restrict Golson's competitive activity,  including his competitive activities once he ceases to be an employee of AssuredPartners of Alabama LLC. ("AssuredPartners.)

19.)    Paragraph 3 of the Agreement states as follows:

    3.    Non-Solicitation & Non-Interference.

        (a)    During Employee's employment with the Company, Employee shall not induce or attempt to induce, or refer to a third party the purpose of such third party inducing or attempting to induce, any person or entity to purchase an Insurance Product (as defined below) from any entity other than a member of the Employer Group. Furthermore, during the **twenty-four (24) month period i**mmediately following the date upon which Employee's employment ends with the Company (whether voluntary or involuntary or with or without cause) (the "Restricted Period"), Employee shall not directly or indirectly through another person or entity (each, a "Restricted Activity") (EMPHASIS ADDED):

    offer, sell, solicit, quote, place, **provide, renew or service any insurance product or service to, for, or on behalf of, any Restricted Client** (EMPHASIS ADDED):

        (i)    take any action intended, or reasonably likely, to cause any Restricted Client, or any **vendor, insurance carrier, wholesale broker,** other client of the Employer Group, or any other third party that, in each case, Employee knows or has reason to know has a **material business relationship with the Employer** Group, to **diminish its business with, or cease or refrain from doing business with, the Employer Group** (EMPHASIS ADDED): or

        (ii)    **solicit for employment, hire, engage to perform services, or induce to terminate employment with the Employer Group, any of the Employer Group's current employees, or solicit for employment, hire, or engage to perform services, any person that was employed by the Employer Group within the six (6) months prior to the cessation of such person's employment with the Company for any reason** (EMPHASIS ADDED):

        (b)    Restricted Clients. For purposes of this Agreement, **"Restricted Client"** means the following:

        (i)    **any client of the Employer Group during the two (2) years immediately preceding the date upon which Employee's**

**employment with the Company ends for any reason** (EMPHASIS ADDED):

(A) as to which **Employee received commission compensation and/or fees** (EMPHASIS ADDED);

(B) for which **Employee had material involvement in proposing**, selling, quoting, placing, providing, servicing, or renewing any insurance product or service offered by any person or entity within the Employer Group (each, an "Insurance Product"); or

(C) about whom Employee received Confidential Information (EMPHASIS ADDED): or

(ii) any **prospective client of the Employer Group** during the two (2) years immediately preceding the date upon which Employee's employment with the Company ends for any reason (EMPHASIS ADDED):

(A) for which Employee had material involvement in proposing, selling, quoting, placing, providing, servicing or renewing any Insurance Product, or

(B) about whom the Employee received Confidential Information.

(c) Employee acknowledges and agrees that the definition of Restricted Clients is reasonable in scope and degree, is not overly broad, and, upon any enforcement of the Restricted Covenants, will not preclude or prevent Employee from earning a living after the termination of Employee's employment with the Company. (See Exhibit A ¶ 3.to Complaint)

20.) The term "Employer Group" is defined in paragraph 2(a) of the Agreement the "Company") (AssuredPartners of Alabama LLC ) and its "affiliates, subsidiaries, and each of their respective successors or assigns." Except for AssuredPartners of Alabama LLC, the other non-signatory members of the "Employer Group" are not listed or specifically identified by name in the Agreement.

21.) Alabama Code Section 8-1-190 *et seq* ("Act") was signed into law in 2015 (to take effect on January 1, 2016.

22.) The Act preserved the pre-existing presumption in Ala Code 8-1-1 of the Code of Alabama (1975) against contracts in restraint of trade. Ala Code Section 8-1-190 (Alabama Comment). This presumption is further reflected in Ala Code Section 8-1-190(a) ("Every contract by which someone is restrained from exercising a lawful profession, trade or business of any kind otherwise than is provided by this section is to that extent void.")

23.) Alabama Code Section 8-1-190(b) lists the contracts that are allowed to preserve a protectable interest.

9378717.1

24.)     Among the types of contracts that are allowed to preserve a "protectable interest.) under Ala Code Section 8-1-190(b) is the following:

> *An agent, servant or employee of a commercial entity may agree with such entity to refrain from <u>soliciting current customers,</u> so long as the commercial entity carries on a like business, subject to reasonable tie restraints. Restraints of <u>18 months</u> or for as long as post-separation consideration is paid for such agreement, whichever is greater, are presumed to be reasonable.* (EMPHASIS ADDED)

25.)     Alabama Code Section 190-1-1(a) describes the "protectable interest(s)" under the Act. Among these listed protectable interests is:

> *Commercial relationships or contacts with <u>specific prospective or existing customers, patients, vendors or clients.</u>* (Ala code Section 8-1-191(b)(3). (EMPHASIS ADDED)

26.)     The Alabama Comment to Ala Code 8-1-191 provides more guidance about "prospective commercial relationships." Specifically, this Alabama Comment states:

> *"Merely prospective commercial relationships are not protectable unless the proponent of the covenant can show substantial investment in the specific commercial relationship."*

27.)     The restrictions in the Agreement go beyond what is permitted under the Act. Specifically:

a.)     "Prospects" cannot be included in a non-solicitation agreement. (Ala Code Sections 8-1-190 and 191).

b.)      To the extent that the two-year look-back for the definition of "Restricted Clients" seeks to restrict the ability to solicit clients who were once, but are not now, clients of AssuredPartners, such clients are not "current" clients under AlaCode Section 8-1-190(b)(5).

c.)      Nowhere in the Act is there the power of an employer to forbid a former employee from accepting and servicing clients of the employer if the client makes an independent unsolicited decision to fire the former employer (here AssuredPartners) and follow the employee to her or his new employer.

d.)      There can be no "protectable interest" in a client who the employee has never met even if commissions from that client are being assigned to the employer.

28.)     The Agreement likewise has an attorney fee-shifting (loser pays) provision as follows:

"If either the Company or Employee engages one or more attorneys **to enforce** any of the terms of this Agreement or otherwise protect it against any breach or threatened breach of this Agreement, whether or not a lawsuit or claim is actually filed, the non-prevailing party shall be responsible for and shall promptly pay all of the prevailing party's reasonable attorneys' fees, costs and expenses, and all other reasonable costs and expenses, in addition to any other legal or equitable relief to which the prevailing party may be entitled." (See Exhibit A to complaint at ¶ 18).) (EMPHASIS ADDED]

29.)     Although this fee shifter is cast as a two-way provision under which both the Company and Employee, may seek attorney fees, it is expressly limited to "enforce[ing]" rights under the agreement and the rights relative to restrictive covenants.   Such rights could only be "enforced" by the Company.  This is a *de facto* one-way fee shifter.

30.)     Such a one-way fee shifter renders the Agreement as being fatally defective for lack of mutuality.


NOW THERFORE:

Golson/Palomar seek a declaratory judgment

a.)  Limiting the non-solicit restriction as to Golson to merely "soliciting" actual AssuredPartners clients (not former clients) with which Golson had an actual relationship (not just assigned commissions)

b.)  Limiting the competitive restraints to solicitation only, meaning that Golson is free to accept, quote, service and place insurance with AssuredPartners clients who independently come to him for their insurance needs;

c.)  Declaring the "prospects" language in the Agreement to unenforceable as to Golson;

d.)  Striking any competitive restriction that goes beyond 18 months from Golson's resignation from AssuredPartners

e.)  Declaring the Agreement to be void in its entirety for lack of mutuality or, in the alternative, the pervasive scope beyond the permissible limits of Ala Code 8-1-190 *et seq* .


Respectfully submitted this the 12th day of August 2020.


*/s/ Will Hill Tankersley*
One of the Attorneys for Palomar Insurance
Corporation and Austin T. Golson


28

9378717.1

**OF COUNSEL:**

Will Hill Tankersley
BALCH & BINGHAM LLP
105 Tallapoosa Street, Suite 200
Montgomery, Alabama 36104-2549
Telephone:     (334) 269-3100
Facsimile:     (205) 488-5872
Email:         WHT@balch.com

Adam K. Israel
Robert V. Baxley
BALCH & BINGHAM LLP
1901 Sixth Avenue North, Suite 1500
Birmingham, Alabama 35203
Telephone:     (205) 251-8100
Facsimile:     (205) 226-8799
Email:         aisrael@balch.com
               rbaxley@balch.com

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and that service will be perfected upon the following this 12th day of August, 2020 via the CM/ECF system:

David L. Warren, Jr.
David C. Williams
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
430 20th Street North, Suite 1900
Birmingham, Alabama 35203
Email: david.warren@ogletreedeakins.com
       dave.williams@ogletreedeakins.com

*/s/ Will Hill Tankersley*
Of Counsel

9378717.1